# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

IN RE DONNA U. GRODNER                                    **MISC. ACTION**

**NO. 3:14-mc-00050-BAJ**

## ORDER OF SUSPENSION

Having provided attorney Donna U. Grodner with (1) notice of the possibility of sanctions for her willful failure to comply with this Court's Local Rules and the Louisiana Rules of Professional Conduct, and (2) an opportunity to show cause why sanctions should not be imposed, the Court now determines that sanctions are warranted based on Ms. Grodner's affirmative misrepresentations made while serving as plaintiff's counsel in civil action 3:12-cv-00629-BAJ-RLB, *Robinson v. Babin, et al.* Accordingly, for reasons fully explained below,

**IT IS ORDERED** that **DONNA U. GRODNER'S** admission to practice in the United States District Court for the Middle District of Louisiana is hereby **SUSPENDED,** effective immediately, for a period of **SIXTY (60) DAYS.**

## I.    BACKGROUND

This disciplinary action arises from affirmative misrepresentations made in filings by attorney Donna U. Grodner in civil action 3:12-cv-00629-BAJ-RLB, *Robinson v. Babin, et al.* Ms. Grodner—an experienced litigator and long-standing member of the bar of the Middle District of Louisiana—served as lead counsel and attorney of record for Plaintiff Darrin Robinson.[1] On June 18, 2014, five days before

---

[1] Robinson, an inmate in the custody of the Louisiana Department of Corrections, sued multiple prison officials alleging that he was subjected to "corporal punishment" in violation of various

trial in the *Robinson* matter, the Court held a hearing to address issues raised in pre-trial motions, including Ms. Grodner's various requests for subpoenas of witnesses to offer testimony at trial. (12-cv-00629 Doc. 110; *see also* Hearing Transcript, June 18, 2014 (hereinafter "Motions Hearing Transcript")).

The witnesses Ms. Grodner sought to produce at trial are each inmates in the custody of the Louisiana Department of Corrections. (*See* Doc. 108; Doc. 109; Doc. 113; Doc. 114; Doc. 115). In her pre-trial motions, Ms. Grodner repeatedly characterized her requests for "*subpoena[s] duces tecum/ad testificandum*" as "unopposed." (Doc. 108 at p. 1 (emphasis in original); Doc. 109 at p. 1 (same); Doc. 113 at p. 1 (same); Doc. 114 at p. 1 (same); Doc. 114 at p. 1 (same); Doc. 115 at p. 1 (same)). Indeed, Ms. Grodner *persisted* in her characterization of her requests as "unopposed" even *after* Defendants' counsel filed a response stating unequivocally: "Plaintiff's counsel did not contact defendants' counsel regarding the Motions; defendants oppose Plaintiff's Motions." (*Compare* Doc. 111 at p. 1 (Defendants' Opposition to Motions for Issuance of Subpoena Duces Tecum/Ad Testificandum, dated June 17, 2014), *with* Doc. 113 (Plaintiff's "Unopposed" Motion for Issuance of Subpoena Duces Tecum/Ad Testificandum, dated June 18, 2014), Doc. 114 (same), Doc. 115 (same)).

---

constitutional and state law provisions. (*See* 12-cv-00629 Doc. 1 at ¶¶ 60–61). Following a trial limited to the issue of whether "Defendants subjected . . . Robinson to cruel and unusual punishment, in violation of . . . the Eighth Amendment to the United States Constitution," the jury rejected Robinson's claims. (*See* Doc. 127 at p. 1).

At the June 18 motions hearing, the Court confronted Ms. Grodner about her apparent misrepresentations regarding Defendants' position. The following colloquy ensued:

> BY THE COURT: Well, let me ask you this Ms. Grodner, did you confer with Ms. Collier, Mr. Sanders or anyone else at the Attorney General's office before you included in your motion that the State had no objection?
>
> BY MS. GRODNER: No, your Honor, simply on the Judge's order. I—I—I assumed that—
>
> BY THE COURT: Do you understand that there is a huge difference between [saying] "according to the Judge's order we can do this" and saying that "the State has no objection"? You essentially lied to me.
>
> BY MS. GRODNER: I didn't intend it to be a lie, your Honor. I just intended to get—there's only two ways a witness can be produced, either video or ad testificandum.
>
> BY THE COURT: I'm not talking about that. I'm not talking about the substance here. I'm talking about the fact that you represented to the Court . . . that . . . the Defendants had no objection to the issuance of these subpoenas when in fact, they had objections. And, not only that, [your misrepresentation was not based on a] misunderstanding, because by your own admission you didn't even bother to check with the State about that.
>
> BY MS. GRODNER: Correct.

(Motions Hearing Transcript).

Ultimately, the Court granted certain of Ms. Grodner's requests for subpoenas. (Doc. 117; Doc. 119). Other requests were rendered moot by Ms. Grodner's decision not to call certain witnesses. (*See* Doc. 126). The *Robinson*

3

matter proceeded to trial and, after two days of evidence and argument, the jury returned a verdict in favor of Defendants. (Doc. 127).

On July 31, 2014, after the jury's verdict in the *Robinson* matter was entered and the 30-day period for filing an appeal had elapsed, the Court *sua sponte* initiated this disciplinary action. (14-mc-00050 Doc. 1). In a detailed Order to Show Cause, the Court recounted the facts previously stated; cited specific locations in the record where Ms. Grodner's objectionable behavior could be found; listed potential bases for sanctions—specifically, violation of this Court's Local Rules and the Louisiana Rules of Professional Conduct—as well as the range of potential sanctions at issue; and laid out the procedures that must be followed and the legal standard that must be met before sanctions may be imposed. (*See id.* at pp. 2–5). In accordance with this Court's Local Rules, and to afford Ms. Grodner her due process right to show cause why sanctions should *not* be imposed "in light of [her] admitted lack of candor," the Show Cause Order set a hearing for August 21, 2014. (*Id.* at p. 4).

Within 24 hours, Ms. Grodner, acting on her own behalf, sought leave to file a pleading styled "Response to Order to Show Cause." (Doc. 2). The Court granted Ms. Grodner's request, ordering that Ms. Grodner's Response be entered as "a new docket entry." (Doc. 3 at p. 1). Despite its styling, Ms. Grodner's rambling 18-page pleading was largely *unresponsive* to the Court's Show Cause Order, devoting

4

significant portions to irrelevant issues, (Doc. 4 at pp. 3–4, 10–17 (discussing whether Ms. Grodner is subject to sanction for violation of Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and/or her performance in unrelated cases)), *non sequiturs*, (*see id.* at p. 14 n.17 ("The secretary, who made this error, no loner [sic] works for Ms. Grodner, because she had to leave once she was accepted into the Harvard Law School on a full scholarship."), and *ad hominem* attacks, (*see id.* at p. 15 ("This Court, itself, is not immune from human error."); *id.* at p. 15 n.21 ("The undersigned has not attempted to comb the docket of this Court to see if other human errors may be found, but suspects that there are other harmless errors."); *id.* at p. 17 ("There are a couple of admitted instances of human error, but this Court itself has committed human error.")).   Those portions of Ms. Grodner's Response devoted to the issue at hand—specifically, whether by styling her motions as "unopposed" Ms. Grodner violated this Court's Local Rules and the Louisiana Rules of Professional Conduct—explained that while Ms. Grodner appreciated the significance of styling a motion "unopposed," *(see id.* at p. 4 ("The motions were labeled 'UNOPPOSED', but technically they should have been labeled 'EXPARTE'."), her misrepresentations were "technical[]" errors which reasonably followed from a "prior Court order," (*see id.* at pp. 2–3).[2]

---

[2]   The "prior Court order" referenced by Ms. Grodner *denied* her request that "incarcerated witnesses" be allowed to provide "live video testimony" in the *Robinson* trial, rather than appear in person. (*See* 12-cv-00629 Doc. 83 (Plaintiff's Motion for Video Appearance and Testimony of Incarcerated Witnesses at Trial); Doc. 104 (Order denying Plaintiff's Motion for Video Appearance

Additional motions and rulings followed.[3] On August 21, 2014, the Court, sitting *en banc*, conducted Ms. Grodner's Show Cause Hearing. (Doc. 10; Hearing Transcript, August 21, 2014 (hereinafter "Show Cause Hearing Transcript")). The Court initiated the hearing by reciting the relevant procedural and factual background, and reiterating the scope of the proceedings, as well as the legal standards and procedural requirements for imposing sanctions. (*See* Show Cause Hearing Transcript at pp. 1–9). Counsel for Ms. Grodner, Elton Heron, entered objections to the form of the hearing (discussed below), and then restated Ms. Grodner's position that her conduct in the *Robinson* matter is not sanctionable because she "honestly believe[d] . . . that there was an order prior to the filing of [her] motion[s] that declared the motion[s] as unopposed." (*Id.* at p. 13). Mr. Heron also asserted that Ms. Grodner was "remorseful" for her actions, "to the extent that . . . [she created] confusion in the Court's record." (*Id.* at p. 17).

After summarizing Ms. Grodner's position, Mr. Heron called Ms. Grodner to testify. Consistent with the tone of her Response, Ms. Grodner was unabashed on

---

and Testimony of Incarcerated Witnesses at Trial); 14-mc-00050 Doc. 4 at p. 2 (identifying the "prior Court order" as "*Ruling and Order* [104]")). As will be explained more fully below, there is simply *nothing* in this "prior Court order" that would lead a reasonable attorney—much less an experienced litigator such as Ms. Grodner—to conclude that it: (1) relieved counsel of the obligation of checking with opposing counsel before stating that a motion was "unopposed"; or (2) foreclosed the possibility that opposing counsel would oppose a request for subpoenas of witnesses in the future. (*See generally* 12-cv-00629 Doc. 104).

[3] Specifically, the Court denied Ms. Grodner's motion requesting transfer of this matter "to another judge" (Doc. 5 at p. 1; Doc. 6), and granted Ms. Grodner's motion seeking to enroll attorney Elton Heron to represent her in this proceeding, (Doc. 7; Doc. 8).

the witness stand. As before, Ms. Grodner conceded that she understood the significance of labeling a motion "unopposed," (*see id.* at p. 27 (MS. GRODNER: "I wish I had not put unopposed or—I wish I had used the word ex parte."), but reiterated that her misrepresentations were attributable to "the Court order." (*Id.* at p. 26). Ms. Grodner insisted that because the Court had previously indicated that Defendants did not oppose a prior request for video appearance of witnesses at trial, they could not thereafter "object once the Court had issued its ruling." (*Id.* at p. 25). By the same token, Ms. Grodner asserted that she "didn't think that [she] was required to contact opposing counsel [regarding Defendants' position] because [she] was acting quickly in compliance with the Court order." (*Id.* at pp. 25–26). Following Ms. Grodner's testimony, and additional questions from the Court, the Court took the matter under advisement. (*Id.* at p. 35).

In the course of the Show Cause Hearing, the Court indicated that it would solicit affidavits from the attorneys for the Defendants in the *Robinson* matter reaffirming that Ms. Grodner failed to contact them prior to filing her "unopposed" motions. (*Id.* at p. 20). At the Hearing, neither Mr. Heron (nor Ms. Grodner) objected to the Court's proposal. (*See id.*). Nor did Mr. Heron seek to call Margaret Collier—one of the attorneys for the Defendants in the *Robinson* matter—to testify, despite Ms. Collier's attendance at the Show Cause Hearing. However, following the Hearing, and the Court's entry of an order soliciting affidavits from Ms. Collier

7

and David Sanders, (Doc. 11), Ms. Grodner filed a pleading styled "Motion for Reconsideration Objection to Order [11]," (Doc. 12), which is, in effect, a belated objection to the Court's solicitation of the Collier and Sanders Affidavits.

This background brings us up to date. The Court now turns to whether sanctions should be imposed against Ms. Grodner based on her misrepresentations in her requests for subpoenas.

## II. DISCUSSION

### a. Legal Standard

It is beyond dispute that "a federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *see also United States v. Nolen*, 472 F.3d 362, 371 (5th Cir. 2006) ("Courts enjoy broad discretion to determine who may practice before them and to regulate the conduct of those who do."). While this power is "incidental to all Courts," it is nevertheless "one which ought to be exercised with great caution." *See Ex parte Burr*, 22 U.S. 529, 531 (1824). Accordingly, the Supreme Court and the U.S. Fifth Circuit Court of Appeals have provided clear guidance on the procedures District Courts must follow when considering whether to sanction attorneys for violating court rules. First, "[w]hen a court undertakes to sanction an attorney for violating court rules, it is incumbent upon the sanctioning court to observe scrupulously its own rules of disciplinary procedure." *Matter of Thalheim*,

853 F.2d 383, 390 (5th Cir. 1988). Second, "attorney discipline proceedings require proof only by clear and convincing evidence." *Sealed Appellant 1 v. Sealed Appellee 1*, 211 F.3d 252, 254 (5th Cir. 2000). Finally, where potential sanctions include suspension and/or disbarment, "due process requires notice and an opportunity to be heard." *Id.*

As stated in the Order to Show Cause, Ms. Grodner faces the possibility of sanctions for violation of this Court's Local Rules and the Louisiana Rules of Professional Conduct. (Doc. 1 at p. 4). In pertinent part, this Court's Local Rules provide: (1) "[t]his court . . . adopts the Rules of Professional Conduct of the Louisiana State Bar Association, as . . . may be amended from time to time by the Louisiana Supreme Court," M.D. La. LR83.2.4; and (2) "every attorney permitted to practice in this court shall be familiar with these rules," M.D. La. LR83.2.8. In turn, Louisiana's Rules of Professional Conduct require avoidance of conduct involving dishonesty, fraud, deceit, or misrepresentation. *See* La. Prof. Conduct Rule 8.4(c).[4] This Court's Local Rule related to disciplinary procedure states: "[w]illful failure to comply with any [Local Rule] . . . shall be cause for such disciplinary action as the court may see fit, after notice and hearing." M.D. La. LR83.2.8.

---

[4] In addition to facing sanctions for violation of La. Prof. Conduct Rule 8.4(c), the Order to Show Cause advised Ms. Grodner that she faced the possibility of sanctions for violating La. Prof. Conduct Rules 3.3, 3.4, and 4.1. (*See* Doc. 1 at p. 4). However, because the Court determines that the record clearly and convincingly shows that Ms. Grodner willfully violated Rule 8.4(c), it does not address whether her conduct also violated Rules 3.3., 3.4, and/or 4.1.

9

In sum, before the Court may discipline Ms. Grodner for violation of its Local Rules, there must be clear and convincing evidence, following notice and an opportunity to be heard, that Ms. Grodner willfully failed to comply with any Local Rule, including Louisiana's Rules of Professional Conduct related to honesty and candor.

### b. Preliminary Matters

Before the Court proceeds to the merits, it pauses briefly to consider various objections to these disciplinary proceedings raised by Ms. Grodner and her counsel. First, Ms. Grodner asserts that because disciplinary proceedings are "quasi-criminal" in nature, "there needs to be an independent prosecutor." (Show Cause Hearing Transcript at pp. 9–10). Second, she argues that she "should have been provided notice of any witnesses and any other things that she would need to defend herself against, statements or any other matters." (*Id.* at p. 12). Finally, adding a slight wrinkle to her second objection, Ms. Grodner asserts that the Court's post-hearing "supplementation of the record" with affidavits from Ms. Collier and Mr. Sanders deprived her of adequate notice of, and/or an opportunity to respond to, these witnesses. (*See* Doc. 12 at ¶¶ 6–8; *see generally* Doc. 12-1).

To put it mildly, Ms. Grodner is grasping at straws. Although she is correct that the Fifth Circuit has characterized attorney disciplinary proceedings as "quasi-criminal in nature," that Court has stopped well-short of requiring an "independent

prosecutor" in all disciplinary proceedings. *See Crowe v. Smith*, 151 F.3d 217, 230 (5th Cir. 1998). Indeed, the Fifth Circuit has "emphatically dismisse[d] such extensive procedural hoop-jumping" in instances such as this, where "less serious disciplinary sanctions [such as] suspension and reprimand" are at stake. *See id.* To repeat, "a federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers*, 501 U.S. at 43. The published reports are replete with examples of District Courts *sua sponte* conducting show cause hearings based on alleged violations of local rules and rules of professional conduct. *E.g.*, *United States v. Nolen*, 472 F.3d 362, 370 (5th Cir. 2006) ("The district court conducted the show-cause hearing in June 2004 and subsequently entered an order revoking Green's *pro hac vice* admission and barring him from practice in the Eastern District of Texas for five years [based on Green's violation of Texas Disciplinary Rule 8.02]."); *United States v. Brown*, 72 F.3d 25, 28 (5th Cir. 1995) ("At the hearing on the order to show cause, the district court instructed Kidd to explain or give examples in the record to support his allegations of judicial bias."); *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 526 (5th Cir. 1992) ("A contempt hearing was held at which the judge both presided and questioned the attorneys."); *see also In re Moity*, 320 F. App'x 244, 249 (5th Cir. 2009) (unpublished) ("In an attorney disciplinary matter such as this, there is not

another represented party who through the adversary system can obtain relevant evidence.").

Ms. Grodner's second objection—that she has not been provided sufficient "notice of any witnesses and any other things that she would need to defend herself against," (Show Cause Hearing Transcript at p. 12)—is equally frivolous. Indeed it is directly contradicted by Grodner's own Response to the Court's Order to Show Cause, where she discussed each of the Local Rules and Rules of Professional Conduct identified in the Order to Show Cause, (*see* Doc. 4 at pp. 5–10), and advanced an explanation—albeit an *implausible* one—intended to excuse her culpability, (*see id.* at pp. 1–3). In sum, "[Grodner's] very submissions belie [her] assertion of inadequate notice." *See In re Sealed Appellant*, 194 F.3d 666, 671 (5th Cir. 1999).

Finally, Ms. Grodner waived any objection to the Court's "supplementation of the record" with affidavits from Ms. Collier and Mr. Sanders when she failed to raise an objection at the Show Cause Hearing, despite being informed at the Hearing that the Court intended to solicit the affidavits. *Cf. Foradori v. Harris*, 523 F.3d 477, 508 n.26 (5th Cir. 2008) ("In a motion *in limine,* Captain D's raised a *Daubert* objection to Feigenbaum's qualifications; however, Captain D's waived it by failing to timely object to his qualification and testimony at trial.").[5] In any event,

---

[5] To the extent that Ms. Grodner's objection calls into question whether the Court shifted the burden of proof in this matter by "elect[ing] not to call Ms. Collier to testify" at the Show Cause Hearing, Ms.

the Collier and Sanders affidavits are hardly material to the Court's disposition of this matter, insofar as they merely confirm facts already reflected in the record and *admitted to* by Ms. Grodner—specifically, that "Ms. Grodner did not contact [defense counsel in the *Robinson* matter] . . . to inquire as to any opposition to her motions." (*See* Doc. 13 at p. 1 (Margaret Collier Affidavit); Doc. 14 at p. 1 (David Sanders Affidavit); *see also* Motions Hearing Transcript).

### c. Findings of Fact and Conclusions of Law

At bottom, this is a very simple matter. The evidence unequivocally shows— and the Court finds—that Ms. Grodner filed multiple requests for subpoenas styled "unopposed," when, in fact, she had failed to even *contact* Defense counsel prior to filing her pleadings, much less assess Defense counsels' position regarding her requests. (*See* 12-cv-00629 Doc. 108 (*first* "Unopposed" Motion for Issuance of Subpoena Duces Tecum/Ad Testificandum); Doc. 109 (*second* "Unopposed" Motion for Issuance of Subpoena Duces Tecum/Ad Testificandum); Doc. 111 at p. 1 (Defendants' opposition to Plaintiff's motions, stating: "Plaintiff's counsel did not contact defendants' counsel regarding the Motions; defendants oppose Plaintiff's Motions."); Motions Hearing Transcript). Ms. Grodner *persisted* in her position that

Grodner is, again, mistaken. (*See* Doc. 12-1 at p. 2). The Court's Order to Show Cause unambiguously laid out the grounds for possible sanctions, including the fact that Ms. Collier and Mr. Sanders denied ever having been contacted by Ms. Grodner. (*See* Doc. 1 at p. 3). At the Show Cause Hearing, it was incumbent upon *Ms. Grodner* to *rebut* this evidence by, for example, calling Ms. Collier to testify. *See Sealed Appellant 1 v. Sealed Appellee 1*, 211 F.3d 252, 255 (5th Cir. 2000). "That [Ms. Grodner] failed completely to seize upon the opportunity afforded [her] to rebut the [Court's] proof is of no consequence in determining whether [she] had the proper opportunity to do so or whether the [Court] at all times retained the burden of proof." *See id.*

13

her motions were "unopposed" even *after* receiving notice of Defendants' opposition. (*See* Doc. 113 (*third* "Unopposed" Motion for Issuance of Subpoena Duces Tecum/Ad Testificandum); Doc. 114 (*fourth* "Unopposed" Motion for Issuance of Subpoena Duces Tecum/Ad Testificandum); Doc. 115 (*fifth* "Unopposed" Motion for Issuance of Subpoena Duces Tecum/Ad Testificandum)). At a *minimum*, Ms. Grodner's filings exhibit "conduct involving . . . misrepresentation," in violation of La. R. Prof. Conduct 8.4(c). *See* BLACK'S LAW DICTIONARY 1091 (9th ed. 2009) (defining "misrepresentation" to include "[t]he act of making a false or misleading assertion about something," *and* "an assertion that does not accord with the facts").

This is not the end of the inquiry, however, because to satisfy this Court's rules of disciplinary procedure, the evidence must clearly and convincingly demonstrate that Ms. Grodner's "failure to comply" with La. R. Prof. Conduct 8.4(c) was "[w]illful." M.D. La. LR83.2.8. Here again, the Court has little trouble determining that Ms. Grodner's conduct meets this threshold. "[T]he term 'willful' covers behavior that is 'wanton' or 'reckless . . . .'" *Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 395 (5th Cir. 2014) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007)). Ms. Grodner concedes that she failed to contact Defense counsel before representing that her motions were "unopposed," (Motions Hearing Transcript), and, further, that the motions "misstat[ed]" that they were unopposed, (Show Cause Hearing Transcript at p. 13 (MR. HERON: "My client does not deny

14

that she filed the motion misstating . . . it was unopposed). Inexplicably, she persisted in this position even *after* Defense counsel filed their objection in the record. Quite clearly, Ms. Grodner's behavior was "a gross deviation from what a reasonable *person* would do"—let alone a *trained lawyer* of longstanding in this Court's bar. *See* BLACK'S LAW DICTIONARY 1385 (9th ed. 2009) (emphasis added) (defining "reckless" as "[c]haracterized by the creation of a substantial and unjustifiable risk of harm to others and by a conscious (and sometimes deliberate) disregard for or indifference to that risk; heedless; rash").

In sum, the Court finds that the evidence clearly and convincingly demonstrates that Ms. Grodner willfully violated this Court's Local Rules by engaging in conduct involving misrepresentation in the *Robinson* matter. In reaching this conclusion, the Court necessarily rejects Ms. Grodner's attempts to explain away her behavior. Throughout these proceedings Ms. Grodner has insisted that her misrepresentations are excusable based on a "prior Court order." (*See* Doc. 4 at p. 3). As indicated above (*supra* n.2), the "prior Court order" upon which Ms. Grodner relies addressed a *different* issue related to the *Robinson* trial—specifically, Ms. Grodner's request that "incarcerated witnesses" be allowed to provide "live video testimony." (12-cv-00629 Doc. 104). This Order noted that Ms. Grodner's Motion for Video Appearance and Testimony was "unopposed," (*id.* at p. 1), but went on to explain that Ms. Grodner *failed* to show "good cause as to why the

15

incarcerated inmates should not be produced for in-person testimony in open court."
(*id.* at p. 2). Accordingly, the Order *denied* Ms. Grodner's request that witnesses be allowed to provide video testimony, admonishing that all intended witnesses should "appear in-person for testimony in open court on the date of trial." (*Id.* at p. 2).

In effect, Ms. Grodner asserts that, in her mind, her subsequent conduct was justified because this "prior Court order" *foreclosed* the Defendants' ability to object to any requests for production of incarcerated witnesses at a *later* date. (*See* 14-mc-00050 Doc. 4 at pp. 1–4; *see also* Motions Hearing Transcript; Show Cause Hearing Transcript pp. 24–27). The Court finds this explanation patently *incredible*— tantamount to an assertion that the Court somehow enjoined Defendants from raising future objections. Quite simply, "no competent attorney would make this presumption." *See Crowe*, 151 F.3d at 239. Stated differently, Ms. Grodner's characterization of herself as "a mere bungler" is hardly a defense given her many years of practice in this District. *See id.*

But even if, for the sake of argument, the Court credits Ms. Grodner's account that the "prior Court order" caused her to believe that Defense counsel could not object to her requests for subpoenas, it does not help her cause. (*See* Doc. 4 at p. 3 ("It was Ms. Grodner's understanding that the State Defendants could not now come in and oppose the motion at that point."). This is because Ms. Grodner's explanation is *inconsistent* with her *admissions* that she appreciates the

16

significance of a motion styled "unopposed." (*See id.* at p. 3 ("While the better word would have been 'EXPARTE', considering the prior court order, the use of the word 'UNOPPOSED' in the title of the motions was not dishonest, false, or indicative of any lack of candor."); *see also* Show Cause Hearing Transcript at p. 27 (Ms. Grodner: "I wish I had not put unopposed or – I wish I had used the word *ex parte*.")). Even assuming that the Court *had* issued an Order enjoining Defendants' from objecting to Ms. Grodner's future requests, such an Order would not have prospectively eliminated Defendants' "opposition"; it would merely have limited their ability to voice it. Likewise, such an Order would not have eliminated Ms. Grodner's obligation to contact Defense counsel to determine their position prior to styling motions "unopposed." At risk of (*re*)stating the obvious, Ms. Grodner's failure to contact defense counsel, combined with her assertions that her motions were "unopposed," created the very *misrepresentations* that are the root of this disciplinary proceeding.

### d. Appropriate Sanctions

Having determined that the record supports a finding that Ms. Grodner willfully violated La. R. Prof. Conduct 8.4(c), the question becomes what sanction(s) to impose. The Order to Show Cause put Ms. Grodner on notice of a range of possible sanctions including, but not limited to, "reprimand, ethics training, suspension, disbarment, and/or civil fines." (Doc. 1 at p. 1). This Court's Local

Rules provide that the Court may impose "such disciplinary action as the court may see fit" upon proof of willful noncompliance with a Local Rule. M.D. La. LR83.2.8. The Fifth Circuit has provided additional guidance: "In imposing a sanction after a finding of misconduct, a court should consider the duty violated, the attorney's mental state, the actual or potential injury caused by the attorney's misconduct, and the existence of aggravating or mitigating factors." *In re Sealed Appellant*, 194 F.3d at 673.

Here, each factor favors a sanction greater than mere reprimand. First, Ms. Grodner engaged in (at minimum) willful conduct involving misrepresentation and therefore "violated ethical duties owed to the public, the profession, *and* the judicial system." *See id.* at 674 (emphasis added). It goes without saying that an attorney's duty of candor is paramount. Ms. Grodner's misrepresentations "seriously adversely reflect[] on [her] fitness to practice." *See id.*

Likewise, Ms. Grodner's "mental state" suggests that a harsher sanction than reprimand is required. From the beginning, Ms. Grodner has brazenly refused to acknowledge her culpability, insisting that her misrepresentations were, at most, "technical[]" errors. (*See* Doc. 4 at pp. 2–3). Never once in her appearances before the Court, or her filings, has Ms. Grodner ventured an apology for her misstatements. And while she has expressed "remorse[]" through her counsel, it is only "to the extent that . . . [she created] confusion in the Court's record." (Show

Cause Hearing Transcript at p. 17). These observations create the distinct impression that Ms. Grodner fails to appreciate the gravity of her misconduct, and the significance of her duty of candor. This impression is reinforced by the contemptuous tone of Ms. Grodner's Response to the Court's Order to Show Cause. (*See generally* Doc. 4). A light sanction would simply reinforce Ms. Grodner's belief that her actions resulted from "human error," (Doc. 4 at p. 15), rather than a failure to satisfy the ethical duties expected of all members of our "learned profession." *Lamar v. Am. Fin. Sys. of Fulton Cnty., Inc.*, 577 F.2d 953, 955 (5th Cir. 1978) ("Lawyers of experience who practice what we boast to be a learned profession owe a duty both to their clients and to the court, and, perhaps, even to other members of their profession who appear as opposing counsel, to prepare cases properly, to give the issues full consideration before preparing pleadings, and, in general, to exercise diligence in the practice of their profession.").

Third, as indicated above, the "actual or potential injury" caused by Ms. Grodner's misconduct is of the gravest type, as it calls into question the integrity of the legal profession and the judicial system in the eye of the public. *See In re Sealed Appellant*, 194 F.3d at 674.

Finally, the existence of aggravating factors favors a strong sanction. *Id.* at 673. In particular, the Court notes that in the last three months *alone*, multiple judges of this District have issued written orders commenting on Ms. Grodner's lack

19

of professionalism, and have warned that continued failure to abide by Local Rules and ethical obligations may result in sanctions being imposed. *See, e.g., Sonnier v. Honeycutt, et al.*, No. 12-cv-00292 (M.D. La. June 23, 2014) (Jackson, C.J.), ECF No. 45 at p. 1–2 (order striking proposed pretrial order filed by Ms. Grodner, expressing frustration at "counsels' attempt to submit documents . . . that have been altered with a black marker," and warning that *"continued failure to comply with [Local Rules] shall result in <u>sanctions</u>"* (emphasis and underline in original)); *Hill v. Kilbourne, et al.*, No. 11-cv-00778 (M.D. La. June 19, 2014), ECF No. 80 at p. 1, 3 (Dick, J.) (order striking various motions filed by Ms. Grodner, describing the filings as "sloppy," "unprofessional," and "virtually undiscernible," and admonishing Ms. Grodner "to review the Local Rules and Administrative Procedures of the Middle District Court"); *Kleinpeter, et al. v. Kilbourne, et al.*, No. 13-cv-00357 (M.D. La. July 22, 2014), ECF No. 67 at pp. 1, 4 (Bourgeois, Mag. J.) (order denying motion for leave to amend, noting Ms. Grodner's repeated failure to comply with the Court's Local Rules and warning that "[t]he Court must consider appropriate sanctions should these violations continue to occur"). Additionally, the Court takes judicial notice that Ms. Grodner was recently sanctioned in excess of $10,000.00 in a state court action for violating her duty of reasonable inquiry under Article 863 of the Louisiana Code of Civil Procedure, *see Perkins v. Roy O. Martin Lumber Co., LLP, et al.*, No. 86095A (10th Judicial District Court, Parish of Natchitoches, Louisiana

July 24, 2014) (Harrington, J.) (order granting Defendants' motion for sanctions against Plaintiff's counsel Donna Grodner). *See In re Moity*, 320 F. App'x at 249 (approving the district court's actions to obtain information from a state judge regarding an attorney's past disciplinary history).

Having received multiple warnings regarding the consequences of her substandard performance in such a short period of time, the Court lacks confidence that a sanction less than suspension from practice will suffice to catch Ms. Grodner's attention. Given the nature of Ms. Grodner's violation, her mental state, the potential harm caused by her actions, and the aggravating factors discussed above, the Court determines that a sanction of 60 days suspension from practice in the Middle District of Louisiana is appropriate. *Cf. In re Kelly*, 2010-1934 (La. 1/19/11), 54 So. 3d 1096, 1199–01 (attorney's misrepresentation in pleading warranted suspension from the practice of law for 18 *months*, with all but 12 months deferred).

III. **CONCLUSION**

Accordingly, in light of the clear and convincing evidence showing that Ms. Grodner willfully violated this District's Local Rules and Louisiana Professional Conduct Rule 8.4(c),

**IT IS ORDERED** that **DONNA U. GRODNER'S** admission to practice in the United States District Court for the Middle District of Louisiana is hereby **SUSPENDED,** effective immediately, for a period of **SIXTY (60) DAYS.**

**IT IS FURTHER ORDERED** that Ms. Grodner's **MOTION FOR RECONSIDERATION OBJECTION TO ORDER [11] (Doc. 12)** is **DENIED.**

**IT IS FURTHER ORDERED** that the Clerk of Court shall forward this Order of Suspension to the Clerks of Court for the U.S. Fifth Circuit Court of Appeals, the District Court for the Eastern District of Louisiana, and the District Court for the Western District of Louisiana.

Baton Rouge, Louisiana, this 2nd day of September, 2014.

BRIAN A. JACKSON
CHIEF JUDGE

SHELLY D. DICK
DISTRICT JUDGE

JOHN W. DEGRAVELLES
DISTRICT JUDGE

JAMES J. BRADY
SENIOR JUDGE